Christopher Bolte, Respondent, *v.* The Third Avenue Railroad Company, Appellant.

*Examination of witnesses by the court, when improper — allegations in a negligence case which warrant proof of all the effects of the injury.*

Where, upon the trial of an action to recover damages for personal injuries, the court takes the examination of the plaintiff's witnesses out of his counsel's hands and proceeds to bring out the plaintiff's case upon points which have not been touched upon in the examination by the plaintiff's counsel, and not only asks questions which are leading in form and which would have been incompetent in their nature had they been asked by the plaintiff's counsel, but calls the attention of the plaintiff's witnesses to apparent contradictions in their testimony and suggests corrections, and makes no effort to elucidate the facts of the defendant's case, a judgment entered upon a verdict in favor of the plaintiff will be reversed upon the ground that the peculiar conduct of the trial probably prejudiced the jury against the defendant, especially where it appears that when the defendant's counsel expostulated against the conduct of the trial by the court he was placed in a position of direct antagonism with the court.

An allegation contained in a complaint in an action to recover for personal injuries, that the accident resulted in severe injuries to the plaintiff's person, from which he has not recovered, and will not recover, and that by reason of the injuries he has been unable to follow his usual occupation or do any work whatever, and that he has suffered great pain and agony, is sufficient to warrant proof of all the effects of the injuries which he received; and if the defendant desires a more specific allegation it should move to have the complaint made more definite and certain or for a bill of particulars.

Appeal by the defendant, The Third Avenue Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff,

entered in the office of the clerk of the county of New York on the 18th day of March, 1898, upon the verdict of a jury for $11,675, and also from an order entered in said clerk's office on the 4th day of April, 1898, denying the defendant's motion for a new trial made upon the minutes.

*Herbert R. Limburger*, for the appellant.

*John M. Gardner*, for the respondent.

RUMSEY, J.:

The action was brought to recover for injuries received by the plaintiff on the 12th day of December, 1895, when he was driving one of the horse cars of the Central Crosstown Railroad Company at a point where the track of that road crosses the Third Avenue railroad at Ninth street. His story substantially was that while he was driving along Ninth street, going west, he had stopped on the east side of Third avenue to let off some passengers; as his car stood there he saw a Third avenue car coming down the street, which was stopped a short distance above the place where the plaintiff stood on his car. He received a signal from his own conductor to start his car, and at the same time the gripman of the Third avenue car beckoned to him to go on. He started his car and just as he had reached the tracks of the Third Avenue railroad the cable car was started by the gripman and came down with great force upon the street car, upon which the plaintiff stood, forcing it off the track and violently throwing the plaintiff to the ground. By the fall he received, as he claims, very serious injuries, and it is to recover for those injuries that he brought this suit. Upon the trial he recovered a verdict for $11,675. A motion for a new trial was made, which was denied, and judgment having been entered upon the verdict this appeal was taken from the judgment and order.

A very large amount of testimony was given upon the trial and a great number of exceptions were taken. Many of these exceptions were based upon the admission of evidence of ailments of the plaintiff as the result of his injuries, but which probably were not a necessary result of them. The claim on the part of the defendant is that these afflictions constituted special damage, not necessarily

growing out of the injuries received, and that as they were not set out in the complaint evidence of them was not competent. This contention of the defendant is answered by the rulings of the court in the case of *Ehrgott* v. *Mayor* (96 N. Y. 264). The general allegation that the occurrence inflicted upon the plaintiff severe injuries to his person and from which he has not recovered, and will not recover, and that by reason of the injuries he has been unable to follow his usual occupation or do any work whatever, and that he has suffered great pain and agony, is sufficient to warrant proof of all the effects of the injuries which he received. If the defendant desired a more specific allegation it should have moved to make the complaint definite and certain or for a bill of particulars. It is said that a bill of particulars was served and that these injuries were not specified therein. No such paper, however, appears in the record, and, therefore, the case must be determined as though no such paper had been served. Had the record contained a bill of particulars it is quite possible that there would have been found in it a statement of these very injuries which were said to have been received. The exceptions, therefore, which are based upon the admission of evidence of what is claimed to be special damage, are not well taken.

Many other exceptions to the admission of evidence and the ruling of the court were taken upon the trial, but the conclusion which we have reached as to the disposition of the case renders it unnecessary for us to consider these numerous exceptions in detail.

The proceedings upon the trial were so unusual that we are forced to the conclusion that, as the result of the action of the learned justice who presided, it is probable that the defendant's case did not receive from the jury the consideration to which every party is entitled, and that injustice may have been done.

The verdict was a very large one, and although from the story of the plaintiff, corroborated as it was, we cannot say that it was excessive, yet in view of all the conditions existing at the trial, it would be more conducive to justice, in our judgment, that the case should be submitted to another jury who would examine it free from the influence which it seems to us the jury upon this trial must necessarily have felt in view of the part taken in the trial by the learned justice who presided.

It appears from the case that almost immediately after the taking

of evidence had begun, and while the plaintiff himself was on the stand, the court took the examination of the witnesses out of the hands of the counsel for the plaintiff and proceeded to bring out the plaintiff's case upon points which had not yet been touched upon by the examination of his counsel. This took place not only upon the examination of the plaintiff, but of every other witness sworn by the plaintiff upon the trial of the case. After the plaintiff had rested his case and the defendant had proceeded to the examination of his witnesses, the court discontinued its examination and the counsel for the defendant put in his evidence without any effort on the part of the judge to elucidate the facts of the defendant's case, as he had brought them out on the part of the plaintiff. Not only did the learned justice conduct to a very considerable extent the examination of the plaintiff's witnesses, but many of the questions which were asked by him were such as the counsel of the plaintiff himself would not have been permitted to put. Not only were they leading, suggesting to the witnesses the answer which was sought, but in several instances when the evidence of the witness seemed to be contradictory in its nature, the court called attention to the apparent contradiction, asked the witness if he was not mistaken, and suggested a correction. For a considerable time, in the the early part of the trial, this mode of examination by the court was not objected to by the defendant's counsel, and no exception, therefore, was taken to the questions, but at a later period of the trial, and while the plaintiff still had the case, the defendant's counsel did object to the continued examination by the court and in various instances to the form of the question, but these objections were overruled and the defendant's counsel excepted. Not only did this take place, but it is quite evident from a careful examination of the evidence as it was brought out by the court, and of the different colloquies which took place between the court and the defendant's counsel when he expostulated against the mode of conduct of the trial, that undue pressure was put upon the defendant's counsel, and in his effort to prevent the learned justice from taking the case out of the hands of the plaintiff's counsel and assuming the conduct of the trial in his behalf, and thus throwing the great weight of his position upon the side of the plaintiff, he was put in a position of direct antagonism to the court.

As we have said, many of the questions asked by the court were objectionable in their form, and not a few of them, had they been asked by the plaintiff's counsel at the time when the court put them, would have been incompetent in their nature. It is quite clear that this evidence, thus brought out, worked a serious injury to the defendant, and for this reason we are of opinion that the judgment and order should be reversed and a new trial granted because of the exceptions which were taken to the rulings of the court upon questions of that kind.

But if no exception had been taken to these rulings, and the case stood simply upon the fact that the learned justice, over the objection of the defendant, had assumed the conduct of the trial, we think that the course thus taken would have been sufficient of itself to require a reversal of this judgment. It is quite true that the judge is not called upon, during a jury trial, to sit quietly in his place and content himself with the preservation of order and ruling upon such questions of law as are submitted to him by counsel. His duty is something higher than that. He is there to see, so far as may be, not only that the trial is properly conducted in point of form, but he is at liberty as to those facts which are brought out by the counsel, to see that they are properly presented to the jury. It may be that a question put by the court now and then as to some fact which is indefinite, or indistinctly brought out, may serve to clear up a disputed point or to establish the fact in such a way that it will be of great service to the jury who are to pass upon the facts, or may enable the court more intelligently to rule upon a question of law presented to it. In such case it is undoubtedly not only the privilege but the duty of the court to see that such a fact is brought out. It may be that the case is such that the administration of justice requires that the court should enable the jury to see what its opinion is as to some disputed question of fact. In that case it is not only his right but his duty to see to it that that opinion is made to appear. But those cases are rare. Ordinarily the interests of justice are best subserved and the rights of suitors best attained if the judge leaves to counsel the duty of bringing out the evidence and of clearing up disputed points by cross-examination, and rules upon questions of law that are presented to him, and submits to the jury fairly and plainly and impartially the case upon which they are to pass.

Many years ago it was said by a learned judge and a great philosopher: "It is no grace to a judge first to find that which he might have heard in due time from the bar, or to show quickness of conceit in cutting off evidence or counsel too short, or to prevent information by questions, though pertinent. The parts of a judge in hearing are four: To direct the evidence; to moderate length, repetition or impertinency of speech; to recapitulate, select and collate the material points of that which hath been said, and to give the rule or sentence." This statement of the duty of a judge is not only well put, but represents that duty now just as clearly as when it was written by Lord BACON over three hundred years ago.

Every one who is at all familiar with the conduct of jury trials knows that the jury are largely influenced in their conclusions upon the case by what they believe to be the impression or the opinion of the judge. They obtain this belief, not only from what the judge says in his instructions, but from his appearance, his manner, the remarks that he makes in his rulings, and, generally, from what they infer to be his opinions in respect to the parties and the case. So far as this impression of the jury is received while the judge confines himself strictly to the performance of the duty that is imposed upon him, it is probably unavoidable, and, indeed, a thing to be desired. But the examination of witnesses is a more appropriate function of counsel, and as it is no part of the duty of the judge to enter upon and conduct an extended examination of a witness, and thereby put himself in the place of the counsel who should perform that duty, the inference which the jury necessarily draw from seeing the court in that position must be unfavorable to the person against whom the examination proceeds, and it is quite likely to result in injustice instead of bringing about a fair and impartial consideration of the case by the jury, which is the thing to be sought. When the counsel for the defendant expostulated with the court for assuming the examination of these witnesses to the extent to which it was done, he was told that the right of the court to ask questions was absolute, and that a judge had the right to do so whenever he believed that the interest of justice and the circumstances of the case required it. This statement may be very true, but yet it is possible for a judge to deprive a party of a fair trial, even without intending to do so, by unduly undertaking the conduct of the case

for one party or the other, when such conduct results, or may result, in a plain exhibition to the jury of his own opinions in respect to the case.

Necessarily, the cases upon this subject are not numerous, but yet there are such cases in the books, and whenever the question has been presented to an appellate tribunal, it has held that if, upon a fair consideration of the case, it appears that the action of the judge at the trial was such as to unduly influence the jury in behalf of one party or another, by assuming the duty of counsel and conducting the trial of the case, it was a sufficient ground for reversal. ( *Wheeler* v. *Wallace*, 53 Mich. 355 ; *Dunn* v. *The People*, 172 Ill. 582.)

In this case we are of opinion that an injustice probably resulted to the defendant from the peculiar conduct of the trial, and for that reason the judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

Van Brunt, P. J., Barrett and O'Brien, JJ., concurred.

Patterson, J. :

I concur in the result on the ground that some of the questions put by the court and objected to by the defendant's counsel were such as had they been asked by the plaintiff's counsel and allowed, the exceptions would have been good.

Judgment and order reversed, new trial granted, costs to appellant to abide event.