[No. 38699-2-II.   Division Two.   July 7, 2010.]

COLLEEN EDWARDS ET AL., *Respondents*, v. BARBARA LE DUC
ET AL., *Appellants*.

*Marilee C. Erickson* and *Michael N. Budelsky* (of *Reed McClure*), for appellants.

*Stephanie Bloomfield* (of *Gordon Thomas Honeywell LLP*) and *John S. Mills* (of *Law Offices of David Smith PLLC*), for respondents.

¶1 Van Deren, J. — Barbara Le Duc appeals a jury verdict awarding $100,000 in damages to Colleen Edwards, arguing, among other things, that the trial court abused its discretion in refusing to grant a new trial under CR 59(a)(1).[1] Because of significant irregularities at trial, we reverse and remand for a new trial.

---

[1] Le Duc also argues that the trial court's assistance to Edwards and its remarks throughout trial amounted to a comment on the evidence in violation of article IV, section 16 of the Washington State Constitution. But "if a case can be decided on nonconstitutional grounds, an appellate court should decline to consider the constitutional issues." *HJS Dev., Inc. v. Pierce County*, 148 Wn.2d 451, 469 n.75, 61 P.3d 1141 (2003). Because we reverse based on CR 59(a), we do not reach Le Duc's constitutional argument.

## FACTS

I. Background

¶2  This lawsuit arose from a motor vehicle accident that occurred on November 5, 1995, involving Colleen Edwards and Barbara Le Duc. Le Duc's vehicle hit the back of Edwards's, damaging both vehicles. As a result of this accident, Edwards claimed that she suffered an increase in seizures, pain, and fatigue.

¶3  Edwards's medical history is complex and difficult to piece together from the trial record. At birth, she suffered lung and retinal tissue damage in addition to possible brain damage. She grew up legally blind.[2] In 1979, she was involved in a car accident in which she suffered a closed head injury, a cervical nerve root injury, and an injury to her right leg. In the 1980s, she suffered from chronic neck pain.

¶4  In 1986, Edwards fell on ice, suffering another head injury that resulted in traumatic brain injury, seizure disorder, and "syncopathy."[3] She was treated at the Harborview Medical Center epilepsy clinic for symptoms related to her seizures. For much of the 1980s, she used braces, forearm crutches, and a wheelchair to move around.

¶5  In 1990, Edwards was involved in a second car accident. She did not have any permanent injuries from that accident. Over the course of her life, Edwards has worked as a dog trainer, martial arts instructor, bodyguard specialist, rehabilitation therapist, and private investigator.

---

[2] At some point, Edwards was able to regain enough sight for the State to license her to drive a motor vehicle, though the record does not provide any explanation about how that came about.

[3] Edwards testified that doctors diagnosed her with "syncopathy," which she defined as "a distortion of heart rate." Report of Proceedings at 553.

## II. TRIAL

¶6 Edwards filed a personal injury suit against Le Duc on June 24, 1998.[4] Le Duc admitted liability for the accident and acknowledged that Edwards sustained some temporary back pain as a result of the accident. But Le Duc challenged Edwards's claims that this accident caused additional neurological problems and seizures. On March 31, 2000, the trial court allowed Edwards's attorney to withdraw and continued the scheduled trial proceedings. Ultimately, Edwards represented herself at trial.

¶7 In addition to her own testimony, Edwards called six lay witnesses, including her husband and coplaintiff, Dennis; friends; and colleagues in the dog training community. Several health care providers also testified on her behalf, but Edwards did not call any of her treating or consulting neurologists to testify. Throughout the trial, the court assisted Edwards by rephrasing questions, suggesting questions, and helping her admit exhibits.

¶8 On March 22, 2001, the jury returned a $100,000 verdict in favor of Edwards. On October 24, 2008, after seven years and multiple unsuccessful attempts, Edwards successfully entered the judgment against Le Duc. Le Duc unsuccessfully moved either for remittitur or for a new trial under CR 59(a).

¶9 Le Duc appeals the trial court's denial of her CR 59(a) motion based on procedural irregularities at trial.

---

[4] Edwards had previously brought a personal injury action against Le Duc arising out of this same motor vehicle accident. *Edwards v. Le Duc*, noted at 93 Wn. App. 1011, 1998 WL 804815, at *1, 1998 Wash. App. LEXIS 1613, at *1-2. Edwards moved to voluntarily dismiss her lawsuit two days into trial during her case in chief. The trial court granted her a voluntary dismissal but imposed terms for Le Duc's reasonable attorney fees. *Edwards*, 1998 WL 804815, at *1, 1998 Wash. App. LEXIS 1613, at *1. Edwards appealed, and we reversed the trial court's ruling for lack of authority to impose terms. *Edwards*, 1998 WL 804815, at *2, 1998 Wash. App. LEXIS 1613, at *6.

## ANALYSIS

I. STANDARD OF REVIEW

■■ ¶10 We normally review the grant or denial of a new trial for an abuse of discretion, but we review it de novo if the motion for a new trial is based on an allegation of legal error. *Marvik v. Winkelman*, 126 Wn. App. 655, 661, 109 P.3d 47 (2005); *see State v. Jackman*, 113 Wn.2d 772, 777, 783 P.2d 580 (1989); *Schneider v. City of Seattle*, 24 Wn. App. 251, 255, 600 P.2d 666 (1979). A trial court abuses its discretion when its decision is manifestly unreasonable, is exercised for untenable reasons, or is based on untenable grounds. *Lian v. Stalick*, 106 Wn. App. 811, 824, 25 P.3d 467 (2001). We afford greater deference to a decision to grant a new trial than to a decision to deny one. *Richards v. Overlake Hosp. Med. Ctr.*, 59 Wn. App. 266, 271, 796 P.2d 737 (1990).

II. GROUNDS FOR NEW TRIAL

■■ ¶11 Le Duc argues that the trial court abused its discretion by refusing to grant a new trial under CR 59(a).[5] The judiciary has long recognized that "the ordinary juror is always anxious to obtain the opinion of the court on matters that are submitted to [the juror's] discretion, and that such opinion, if known to the juror, has a great influence upon the final determination." *State v. Crotts*, 22 Wash. 245, 251, 60 P. 403 (1900); *see, e.g., Bolte v. Third Ave. R.R.*, 38 A.D. 234, 237, 56 N.Y.S. 1038 (1899); *State v. Jackson*, 83 Wash. 514, 523-24, 145 P. 470 (1915); *Jankelson v. Cisel*, 3 Wn. App. 139, 144, 473 P.2d 202 (1970).

■ ¶12 A trial court should consider ordering a new trial in instances of "[i]rregularity in the proceedings of the

---

[5] Edwards argues that the panel should incorporate by reference a laches argument that she presented in her motion to dismiss before our commissioner. But a respondent's brief "should contain . . . [t]he argument in support of the issues presented for review, together with citations to legal authority." RAP 10.3(a)(6), (b); *U.S. W. Commc'ns, Inc. v. Utils. & Transp. Comm'n*, 134 Wn.2d 74, 112, 949 P.2d 1337 (1997). "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998). We make no exception here.

court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial." CR 59(a)(1). "Irregularity" includes instances of a trial court's lack of impartiality that has a prejudicial effect on the fact finder. *See* CR 59(a)(1); *Morris v. Nowotny*, 68 Wn.2d 670, 673-74, 415 P.2d 4 (1966); *Hanna v. Bodler*, 173 Wash. 460, 462, 23 P.2d 396 (1933); *Brister v. Council of Tacoma*, 27 Wn. App. 474, 486-87, 619 P.2d 982 (1980).

██ ██ ¶13 A trial court must hold pro se parties to the same standards to which it holds attorneys.[6] *Westberg v. All-Purpose Structures, Inc.*, 86 Wn. App. 405, 411, 936 P.2d 1175 (1997). Here, the trial court appeared to overstep the bounds of impartiality repeatedly during the trial. When Edwards questioned her medical expert witnesses, the trial court assisted her in laying a proper foundation for expert testimony and repeatedly interjected the proper standard of proof for admissible medical opinions or conclusions. But Edwards was unable or unwilling to articulate the trial court's suggested questions, so she repeatedly directed her witnesses to answer court-posed questions, which the trial court permitted. For example, the following exchanges occurred during the testimony of Dr. Sherwood Young, her rehabilitation physician:

> [EDWARDS:] Okay. Now the neuropsychological results, that was—is that considered a medical opinion or a medical fact?
>
> [LE DUC'S COUNSEL]: Your Honor, I'm not sure I understand where we're going here or what the relevance of medical opinion versus medical fact is in a court of law.
>
> THE COURT: Sustained. There's isn't any. *It has to be medically more probable than not a medical certainty, his opinions.*

---

[6] Division Three recently noted an exception to this rule "when a *pro se* plaintiff also suffers from a significant mental disability." *Carver v. State*, 147 Wn. App. 567, 575, 197 P.3d 678 (2008). While the record here showed that Edwards had trouble remembering things, there was no evidence that she had a "significant mental disability" on the order of dementia. *Carver*, 147 Wn. App. at 575. Accordingly, we distinguish *Carver* and apply the traditional rule.

[EDWARDS:] Is there more medical certainty after neuropsychological testing that I had sustained a brain injury?

[LE DUC'S COUNSEL]: Your Honor, I'm going to object until this witness offers his opinion on a more probable than not basis to a reasonable degree of medical certainty that any of these symptoms were caused by the 1995 motor vehicle accident. This is all a futile exercise.

THE COURT: I'm going to sustain that objection.

. . . .

THE COURT: Then ask him the question. *Does he have an opinion, based upon reasonable medical probability, to a reasonable medical certainty, whether or not you suffered any injuries as a result of the 1995 automobile accident.*

[EDWARDS:] *Could you answer the Judge's question so I don't have to repeat it?*

THE COURT: *On a more probable than not basis.*

[DR. YOUNG]: No. On a more probable than not basis I could not offer an opinion in that regard because again the neuropsychological testing is beyond my area of training.

[LE DUC'S COUNSEL]: I renew my motion to strike and ask the witness be excused and jury be instructed not to consider his testimony in this case.

Report of Proceedings (RP) at 246-48 (emphasis added). In attempting to elicit Dr. Young's opinion about injuries she sustained in the accident with Le Duc, the following occurred:

[EDWARDS:] On a more probable basis than not would I—based on my history and symptoms, on a more probable basis than not, did you suspect that I had received some kind of injury from the automobile accident in 1995?

[LE DUC'S COUNSEL]: I guess again to the extent that's asking for a more probable than not basis of a suspicion it's improper. The opinion should be is it your opinion, Doctor, more probable than not.

THE COURT: Sustained. *Leave out the word suspicion. On a more probable than not basis did you suffer injury, brain injury from the 1995 accident. Is that what you want to ask?*

[EDWARDS]: Yes.

THE COURT: *Without the word suspicion, on a more probable than not basis.*

[EDWARDS:] Okay. On a more probable than not basis did I sustain brain injury from the 1995 automobile accident?

. . . .

[EDWARDS:] Dr. Young, when you see seizures increase and increased head injury sequela, would that be the correct term?

[Dr. YOUNG]: Sequela.[7]

[EDWARDS]: Sequela, excuse me. Thank you. What do you suspect?

[LE DUC'S COUNSEL]: Again, the suspicions aren't relevant and are not admissible.

THE COURT: Sustained.

[EDWARDS]: What?

THE COURT: *Just ask very simply in the preparatory aspect of it you've stated what you want to know on a more probable than not basis does he have a[n] opinion as to whether or not you suffered, based on that history, you suffered injury as a result of the accident in 1995.*

[EDWARDS:] *Could you answer the Judge's question?*

RP at 258-61 (emphasis added).

¶14 By allowing Edwards to refer to the trial court's phrasing of the questions, the trial court virtually took over questioning her key witnesses at pivotal points. *See Bolte,* 38 A.D. at 236-37. Ultimately, the trial court stopped requiring that Edwards use the proper standard altogether. After Edwards repeatedly failed to properly frame her questions, the trial court allowed her to thank the trial court—in front of the jury—for helping her question her medical expert witnesses.

¶15 When Edwards questioned her chiropractor, Dr. Peter Adkins, the trial court answered defense counsel's

---

[7] Dr. Young explained the medical term "cognitive sequela" as meaning "the things that come after head injury, which is the difficulties in the thought process." RP at 226. This includes, for example, changes in a person's ability to remember information.

objections in a manner that suggested Edwards's proper response. The trial court also reminded Edwards to ask Dr. Adkins whether the unpaid medical bills were related to his treatment for this particular accident. And the trial court unduly assisted her in admitting exhibits into evidence and stating their purpose in response to defense counsel's objections.

¶16 Le Duc was the only witness to testify for the defense, and this occurred through her counsel's reading of LeDuc's deposition testimony to the jury. Following this defense testimony, the trial court sua sponte directed Edwards—in front of the jury—to offer rebuttal testimony. *See Bolte*, 38 A.D. at 236-37. The trial court then explained the scope of rebuttal and told Edwards specifically that she could address the harm from Le Duc's vehicle's impact.

¶17 Subsequently, Edwards argued to the jury that the trial court's assistance demonstrated the extent and genuine nature of her injuries. She used the trial court's assistance to her advantage without the trial court's admonishing her, even outside the presence of the jury. The trial court did not instruct the jury to disregard its assistance. In her closing arguments, Edwards stated:

> I would just say taking on a case of this magnitude by myself has been a[n] increased work burden for me, very intensive. Sometimes I can't get everything I want done with this case done. *And the Court has been very helpful to me in helping me do that and realizing that I had a limited amount of time to do this and just knew that for a brain injured person to take a case like this one is quite rare.*

RP at 652 (emphasis added). Again, even following Edwards's reference to the trial court's assistance during closing argument, the trial court failed to inform the jury that it could not draw any conclusions about the merits of the case from its actions.

¶18 Under the circumstances, the trial court's actions and words implied to the jury that Edwards's case had more merit than would otherwise be evident. *Bolte*, 38 A.D. at

239; *Crotts*, 22 Wash. at 251. The trial court's repeated assistance when Edwards questioned witnesses and introduced exhibits unfairly emphasized their credibility and weight for the jury. In fact, it is difficult in this record to find one of Edwards's witnesses for whom the trial court did not pose questions, either directly or for Edwards to repeat.[8]

¶19 The scope and extent of trial court's assistance to Edwards placed Le Duc's counsel in an awkward position of either objecting and vexing the trial court or letting the assistance continue. "The court should not place counsel in this position without it becoming absolutely necessary for the furtherance of justice." *Crotts*, 22 Wash. at 248-49.

¶20 We acknowledge that trial courts have a difficult job of overseeing and conducting a trial fairly and efficiently, especially with parties representing themselves, but the trial court must, above all, remain impartial. On this record, it appears that the trial court felt obliged to assist a pro se litigant, but the trial court must treat pro se parties in the same manner it treats lawyers. *Westberg*, 86 Wn. App. at 411; *cf. Bolte*, 38 A.D. at 237, 239.

¶21 Given that improper assistance to Edwards permeated the trial, we conclude that these proceedings contained significant irregularities and hold that the trial court abused its discretion in denying Le Duc's motion for a new trial under CR 59(a)(1).[9]

---

[8] Following our close review of this record, we agree with Le Duc that "[w]ithout the court's guidance, [Edwards] would likely not have elicited any testimony on the reasonableness or necessity of the treatment" or any testimony "on a more probable than not basis to a reasonable degree of medical certainty." Br. of Appellants at 34. Absent this evidence, Le Duc indeed likely "would have successfully moved for a directed verdict." Br. of Appellants at 34.

[9] Furthermore, based on our review of the record, we note that Edwards's case fell far short of proving that the vehicle accident caused any additional seizures or physical injuries and that the jury award far exceeded the evidence of Edwards's medical bills or other damages. Notably, Edwards did not call any of her treating neurologists. Such a scant showing on the record of causation and damages only reinforces the harm arising from the trial irregularities. Were we not to order retrial based on the substantial trial irregularities, we would otherwise rule based on a verdict indicating passion or prejudice or on Edwards's failure to present sufficient causation evidence justifying a finding of liability or damages to the extent awarded by the jury. *See* CR 59(a)(5), (7).

¶22 We reverse and remand for a new trial before a different trial judge.

PENOYAR, C.J., and HUNT, J., concur.

Review denied at 170 Wn.2d 1024 (2011).