

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2018 APR 23 PM 12: 52

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STEVE SWINGER, | ) | No. 76640-6-I |
| | ) | (consolidated with |
| Appellant, | ) | no. 76445-4-I) |
| | ) | |
| v. | ) | |
| | ) | DIVISION ONE |
| WASHINGTON STATE DEPARTMENT | ) | |
| OF FISH AND WILDLIFE; DOES 1-100, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondents. | ) | FILED: April 23, 2018 |
| | ) | |

APPELWICK, J. — The owner of real property burdened by express easements granted to the Washington Department of Fish and Wildlife sued the Department seeking to extinguish the easements. In a series of summary judgment orders, the trial court dismissed several of the property owner's claims and granted the Department's motion to quiet title to declare the physical location of the easements. Following a jury trial and entry of special verdicts, the court entered a final order disposing of the remaining claims. We affirm in all respects.

## FACTS

In 2007, Steve Swinger purchased property in Lyden, Whatcom County Washington. The Nooksack River forms the eastern boundary of the property.

More than half a century earlier, prior owners of the property granted two easements in perpetuity to the Department of Game, the predecessor agency to the Washington Department of Fish and Wildlife (Department). The purpose of the easements was to provide public parking and access to the Nooksack

riverbank for fishing. In 1954, the owners conveyed a 25 foot wide trail along the riverbank on the north and south sides of the river for fishing access. This easement, designated as No. 790220 (the riverbank easement), requires the Department to "construct stiles on the fences to alleviate trespass difficulties." In 1955, the owners conveyed an area adjacent to the riverbank to be used for parking to facilitate access to the riverbank. This easement, designated as No. 790219 (the parking area easement), requires the Department to "[c]ooperate with the Grantors by posting, fencing or using other reasonable means to minimize trespass." The easement further provides for the Department to install gravel and sanitary facilities, if necessary, and prohibits commercial concessions. Both easements were recorded in the Whatcom County Auditor's Office in 1955.

In the decades that followed, members of the public used the easements for fishing without controversy or complaints. Vegetation separates the parking area from the rest of the property and while the Department posted signs and performed limited maintenance, it did not install fencing or sanitary facilities on the undeveloped, primitive site.[1]

When Swinger purchased the property, the title company failed to inform him of the easements granted to the Department.[2] Swinger sued the title company in 2009 and eventually settled that litigation in 2011. See Swinger v. Vanderpol, noted at 197 Wn. App. 1002, 2016 WL 7470091, at 3.

---

[1] The Department installed gravel in the parking area and also installed a gate on the riverbank easement in 2015 after Swinger filed this lawsuit.

[2] The title company also apparently failed to disclose a third easement granted to Whatcom County.

2

Swinger also took steps to physically prevent members of the public from accessing the easements. In 2008, he filed a lawsuit against the Department seeking to extinguish the parking lot easement. The Department moved for summary judgment and asked the court to declare the easement legally valid and to reject Swinger's claim of invalidity due to a lack of consideration. The trial court granted the motion and expressly declared that the parking lot easement was "valid." Department officials later met with Swinger and offered to post additional signs and discussed the installation of fencing. They were unable to reach agreement because Swinger disputed the location of the riverbank easement and insisted upon fencing that would block public access.

Swinger filed another lawsuit against the Department in 2014. Swinger alleged breach of contract based on the Department's failure to comply with the terms of the easement by failing to install fencing, post signage, gravel the parking area, and install sanitation facilities. He claimed the easements were "void," alleged invasion of privacy, and unjust enrichment. The Department asserted counterclaims, including a claim to quiet title to the physical boundaries of the easements and a claim for a prescriptive easement for portions of the riverbank trail that fell outside the 25 foot wide boundary.

Between 2014 and the January 2017 jury trial, the trial court entered several summary judgment orders resolving some of Swinger's claims. After a jury trial that took place over the course of four days and entry of special jury verdicts, the court entered findings of fact, conclusions of law, and a final

judgment. The court also granted a permanent injunction that requires Swinger to keep gates on the easements unlocked during open fishing season and to remove his signs designed to block access, places restrictions on target practice when the river is open for fishing, and prohibits removal of signs posted by the Department. Swinger appeals.

## ANALYSIS

Representing himself pro se below and on appeal, Swinger challenges three partial summary judgment orders.[3] Specifically, he challenges the trial court's orders denying his motions to invalidate the easements on the grounds of

---

[3] As a preliminary matter, Swinger, as the appellant in this case, bears the burden of complying with the procedural rules on appeal. Rhinevault v. Rhinevault, 91 Wn. App. 688, 692, 959 P.2d 687 (1998). Failure to do so may preclude appellate review. State v. Marintorres, 93 Wn. App. 442, 452, 969 P.2d 501 (1999). Pro se litigants are held to the same standards of compliance as attorneys. Edwards v. Le Duc, 157 Wn. App. 455, 460, 238 P.3d 1187 (2010). Swinger's briefing falls well below the standards articulated in RAP 10.3 and settled standards of appellate review.

For instance, despite Swinger's arguments challenging the validity of the easements, he does not assign error to specific rulings or relevant findings. See RAP 10.3(a)(4) (briefing must include a "separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error."). The "background" section includes argumentative assertions and only one citation to the record. See RAP 10.3(a)(5) ("Statement of the Case" is "[a] fair statement of the facts and procedure relevant to the issues presented for review, without argument. Reference to the record must be included for each factual statement."). Swinger also fails to mention, let alone apply, the applicable standard of review to the issues he raises. See RAP 10.3(a)(6). In an appendix to his supplemental opening brief, Swinger supplies documents that are purportedly derived from the record in a prior related appeal. See RAP 10.3(a)(8) ("An appendix may not include materials not contained in the record on review without permission from the appellate court, except as provided by [RAP] 10.4(c)."). The excerpts in Swinger's appendix do not include clerk's papers citations, we are unable to verify whether they are included in the record for Swinger v. State Dep't of Fish & Wildlife, No. 74440-2-I. Despite the serious deficiencies, to the extent possible, we have considered the merits of Swinger's claims.

lack of consideration and unjust enrichment. Swinger also challenges the court's order granting the Department's motion for partial summary judgment to quiet title to the location of the parking lot and riverbank easements.[4]

When reviewing a grant of summary judgment, an appellate court undertakes the same inquiry as the trial court. Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). We consider the evidence and the reasonable inferences therefrom in the light most favorable to the nonmoving party. Schaaf v. Hiahfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); White v. State, 131 Wn.2d 1, 9, 929 P.2d 396 (1997).

Swinger claims that the Department lost its right to quiet title based on the doctrine of laches because the Department "slept on [its] right to obtain quiet title for 61 years."

Laches, an equitable defense based on estoppel, applies when a party affirmatively establishes (1) knowledge of facts constituting a cause of action or a reasonable opportunity to discover such fact; (2) unreasonable delay in commencing an action; and (3) damage resulting from the delay in bringing the

---

[4] Swinger filed two separate notices of appeal challenging the three trial court orders. This court consolidated Swinger's appeals and allowed him to file a supplemental opening brief.

action. Davidson v. State, 116 Wn.2d 13, 25, 802 P.2d 1374 (1991). Swinger points out that despite knowledge of the easements, the Department waited more than 60 years before asserting quiet title. He also claims, as a general matter, that public use has damaged his property and he has been deprived of the full economic value of the property.

It does not appear that Swinger raised this argument below in response to the Department's motion. An appeals court generally will not review an "issue, theory, argument, or claim of error not presented at the trial court level." Lindblad v. Boeing Co., 108 Wn. App. 198, 207, 31 P.3d 1 (2001); RAP 2.5(a). Specific to summary judgment, RAP 9.12 provides that the "appellate court will consider only evidence and issues called to the attention of the trial court." See, e.g., Vernon v. Aacres Allvest, LLC, 183 Wn. App. 422, 436, 333 P.3d 534 (2014) (declining to consider argument on appeal not made during summary judgment proceedings below).

In any event, Swinger makes no meaningful effort to analyze the legal requirements of the doctrine. Most importantly, he fails to explain how the Department had knowledge of facts supporting a cause of action in the absence of evidence of any dispute regarding the existence or location of the public access easements before he purchased the property. Without a showing of conduct that gave rise to a claim regarding the existence or parameters of the easements prior to Swinger's ownership, there is nothing to suggest that the Department unreasonably delayed commencing quiet title proceedings.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STEVE SWINGER, | ) | No. 76640-6-I |
| | ) | (consolidated with |
| Appellant, | ) | no. 76445-4-I) |
| | ) | |
| v. | ) | |
| | ) | DIVISION ONE |
| WASHINGTON STATE DEPARTMENT | ) | |
| OF FISH AND WILDLIFE; DOES 1-100, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondents. | ) | FILED: April 23, 2018 |
| | ) | |

APPELWICK, J. — The owner of real property burdened by express easements granted to the Washington Department of Fish and Wildlife sued the Department seeking to extinguish the easements. In a series of summary judgment orders, the trial court dismissed several of the property owner's claims and granted the Department's motion to quiet title to declare the physical location of the easements. Following a jury trial and entry of special verdicts, the court entered a final order disposing of the remaining claims. We affirm in all respects.

## FACTS

In 2007, Steve Swinger purchased property in Lyden, Whatcom County Washington. The Nooksack River forms the eastern boundary of the property.

More than half a century earlier, prior owners of the property granted two easements in perpetuity to the Department of Game, the predecessor agency to the Washington Department of Fish and Wildlife (Department). The purpose of the easements was to provide public parking and access to the Nooksack

riverbank for fishing. In 1954, the owners conveyed a 25 foot wide trail along the riverbank on the north and south sides of the river for fishing access. This easement, designated as No. 790220 (the riverbank easement), requires the Department to "construct stiles on the fences to alleviate trespass difficulties." In 1955, the owners conveyed an area adjacent to the riverbank to be used for parking to facilitate access to the riverbank. This easement, designated as No. 790219 (the parking area easement), requires the Department to "[c]ooperate with the Grantors by posting, fencing or using other reasonable means to minimize trespass." The easement further provides for the Department to install gravel and sanitary facilities, if necessary, and prohibits commercial concessions. Both easements were recorded in the Whatcom County Auditor's Office in 1955.

In the decades that followed, members of the public used the easements for fishing without controversy or complaints. Vegetation separates the parking area from the rest of the property and while the Department posted signs and performed limited maintenance, it did not install fencing or sanitary facilities on the undeveloped, primitive site.[1]

When Swinger purchased the property, the title company failed to inform him of the easements granted to the Department.[2] Swinger sued the title company in 2009 and eventually settled that litigation in 2011. See Swinger v. Vanderpol, noted at 197 Wn. App. 1002, 2016 WL 7470091, at 3.

---

[1] The Department installed gravel in the parking area and also installed a gate on the riverbank easement in 2015 after Swinger filed this lawsuit.

[2] The title company also apparently failed to disclose a third easement granted to Whatcom County.

Swinger also took steps to physically prevent members of the public from accessing the easements. In 2008, he filed a lawsuit against the Department seeking to extinguish the parking lot easement. The Department moved for summary judgment and asked the court to declare the easement legally valid and to reject Swinger's claim of invalidity due to a lack of consideration. The trial court granted the motion and expressly declared that the parking lot easement was "valid." Department officials later met with Swinger and offered to post additional signs and discussed the installation of fencing. They were unable to reach agreement because Swinger disputed the location of the riverbank easement and insisted upon fencing that would block public access.

Swinger filed another lawsuit against the Department in 2014. Swinger alleged breach of contract based on the Department's failure to comply with the terms of the easement by failing to install fencing, post signage, gravel the parking area, and install sanitation facilities. He claimed the easements were "void," alleged invasion of privacy, and unjust enrichment. The Department asserted counterclaims, including a claim to quiet title to the physical boundaries of the easements and a claim for a prescriptive easement for portions of the riverbank trail that fell outside the 25 foot wide boundary.

Between 2014 and the January 2017 jury trial, the trial court entered several summary judgment orders resolving some of Swinger's claims. After a jury trial that took place over the course of four days and entry of special jury verdicts, the court entered findings of fact, conclusions of law, and a final

3

judgment. The court also granted a permanent injunction that requires Swinger to keep gates on the easements unlocked during open fishing season and to remove his signs designed to block access, places restrictions on target practice when the river is open for fishing, and prohibits removal of signs posted by the Department. Swinger appeals.

## ANALYSIS

Representing himself pro se below and on appeal, Swinger challenges three partial summary judgment orders.[3] Specifically, he challenges the trial court's orders denying his motions to invalidate the easements on the grounds of

---

[3] As a preliminary matter, Swinger, as the appellant in this case, bears the burden of complying with the procedural rules on appeal. Rhinevault v. Rhinevault, 91 Wn. App. 688, 692, 959 P.2d 687 (1998). Failure to do so may preclude appellate review. State v. Marintorres, 93 Wn. App. 442, 452, 969 P.2d 501 (1999). Pro se litigants are held to the same standards of compliance as attorneys. Edwards v. Le Duc, 157 Wn. App. 455, 460, 238 P.3d 1187 (2010). Swinger's briefing falls well below the standards articulated in RAP 10.3 and settled standards of appellate review.

For instance, despite Swinger's arguments challenging the validity of the easements, he does not assign error to specific rulings or relevant findings. See RAP 10.3(a)(4) (briefing must include a "separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error."). The "background" section includes argumentative assertions and only one citation to the record. See RAP 10.3(a)(5) ("Statement of the Case" is "[a] fair statement of the facts and procedure relevant to the issues presented for review, without argument. Reference to the record must be included for each factual statement."). Swinger also fails to mention, let alone apply, the applicable standard of review to the issues he raises. See RAP 10.3(a)(6). In an appendix to his supplemental opening brief, Swinger supplies documents that are purportedly derived from the record in a prior related appeal. See RAP 10.3(a)(8) ("An appendix may not include materials not contained in the record on review without permission from the appellate court, except as provided by [RAP] 10.4(c)."). The excerpts in Swinger's appendix do not include clerk's papers citations, we are unable to verify whether they are included in the record for Swinger v. State Dep't of Fish & Wildlife, No. 74440-2-I. Despite the serious deficiencies, to the extent possible, we have considered the merits of Swinger's claims.

4

lack of consideration and unjust enrichment. Swinger also challenges the court's order granting the Department's motion for partial summary judgment to quiet title to the location of the parking lot and riverbank easements.[4]

When reviewing a grant of summary judgment, an appellate court undertakes the same inquiry as the trial court. Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). We consider the evidence and the reasonable inferences therefrom in the light most favorable to the nonmoving party. Schaaf v. Hiahfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); White v. State, 131 Wn.2d 1, 9, 929 P.2d 396 (1997).

Swinger claims that the Department lost its right to quiet title based on the doctrine of laches because the Department "slept on [its] right to obtain quiet title for 61 years."

Laches, an equitable defense based on estoppel, applies when a party affirmatively establishes (1) knowledge of facts constituting a cause of action or a reasonable opportunity to discover such fact; (2) unreasonable delay in commencing an action; and (3) damage resulting from the delay in bringing the

---

[4] Swinger filed two separate notices of appeal challenging the three trial court orders. This court consolidated Swinger's appeals and allowed him to file a supplemental opening brief.

Swinger also contends that the easements are invalid because the easement conveyances were subject to conditions and duties that the Department failed to satisfy. He appears to argue that genuine issues of material fact preclude summary judgment with regard to the Department's breach of its obligations. However, these issues were resolved by unappealed special verdict jury findings and pretrial summary judgment orders. Swinger raised specific claims in his complaint premised on the Department's failure to install parking area fencing, fencing along the riverbank easement, proper signage, gravelling, and sanitary facilities. All of these claims were rejected by special jury verdicts or pretrial summary judgment orders, none of which are challenged on appeal or included in the appellate record. Nor has Swinger appealed the final judgment incorporating the jury's special verdict findings and the pretrial orders or assigned error to the findings and conclusions addressing these issues. The scope of our review is limited to the specific orders Swinger challenges on appeal. See RAP 2.4(a).

Swinger also appears to challenge the location of the riverbank easement. Below, the Department hired an independent surveyor to establish the physical location of both easements and presented the survey as evidence. The surveyor explained the basis for his opinions in an accompanying declaration. Swinger did not dispute the location of the parking lot easement below, and while he contested the physical location of the riverbank easement, he did not present any evidence to support different physical boundaries. In its February 19, 2016

order, the court declared the physical location of the riverbank easement in accordance with the survey offered by the Department and denied the Department's claim for a prescriptive easement. In the absence of any other evidence in the record to establish the physical location of the riverbank easement, there is no genuine issue of material fact with regard to this issue.

Finally, Swinger requests "restitution for the [fishermen's] use of his pathway from 1955 to the current date" under the doctrine of unjust enrichment. Swinger argues that the Department was unjustly enriched because it did not compensate him or previous owners $1,000 per year—the yearly amount that he alleges was paid to landowners in the area to allow their farmland to be used for hunting purposes.[5]

Unjust enrichment claims arise from implied contracts (sometimes called quasi contracts). Chandler v. Wash. Toll Bridge Auth., 17 Wn.2d 591, 599-600, 137 P.2d 97 (1943). They are not based on contracts between the parties or on their consent or agreement; rather, they are based on "'the fundamental principle of justice that no one should be unjustly enriched at the expense of another.'" Lake Limerick Country Club v. Hunt Mfd. Homes, Inc., 120 Wn. App. 246, 261, 84 P.3d 295 (2004) (quoting Milone & tucci, Inc. v. Bona Fide Bldrs., Inc., 49 Wn.2d 363, 367, 301 P.2d 759 (1956)). Thus, unjust enrichment is the method of recovery for the value of a benefit retained absent any contractual relationship

---

[5] Based on a $1,000 yearly payment plus interest, Swinger claims he is entitled to restitution of $8.8 million. He alternatively seeks $216,000 in restitution, but does not explain the basis for this requested amount.

8

based on notions of fairness and justice. Young v. Young, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008). Unjust enrichment has three elements: (1) there must be a benefit conferred on one party by another; (2) the party receiving the benefit must have an appreciation or knowledge of the benefit; and (3) the receiving party must accept or retain the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value. Id.

Here, of course, the Department's legal obligations arise from an agreement. And beyond Swinger's speculation about what the Department otherwise might have done or paid, there is no factual support in the record for the claim that the Department received any monetary benefit at Swinger's expense. Under these circumstances, the trial court properly dismissed Swinger's claim for unjust enrichment based on an implied contract.

We affirm the court's orders denying Swinger's motions for partial summary judgment and its order granting the Department's motion for summary judgment and quieting title to the location of the easements.

Because the Department is the substantially prevailing party on appeal, we grant its request for costs and statutory attorney fees under RAP 14.2 and RAP 14.3, conditioned on its compliance with RAP 18.1. The Department also appears to seek attorney fees incurred in defending against a frivolous appeal. However, the Department gives only passing treatment to this request and does

not cite to RAP 18.9 or any other statutory basis. We decline to award attorney fees on this ground.

Affirmed.

WE CONCUR: