[No. 21535-7-II. Division Two. January 8, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. LEONEL MARINTORRES, *Appellant*.

---

*Richard L. Davies,* for appellant.

*David G. Skeen, Prosecuting Attorney,* and *Scott M. Charlton, Deputy,* for respondent.

ARMSTRONG, J. — Leonel Marintorres appeals his conviction for first degree escape. He walked away from an Olympic Corrections Center forestry work camp without permission. His defense was that he left because he thought his sentence had run its course. Marintorres argues that the trial court erred by excluding, as hearsay, his proposed testimony that others had told him his sentence was 120 days. He also argues a violation of equal protection from the trial court's order to pay the cost of a Spanish inter-

preter. We affirm the conviction but vacate the assessment of interpreter cost.

## FACTS

On April 12, 1996, the King County Superior Court sentenced Marintorres, a Cuban native, to 24 months in prison for delivery of cocaine. The court recommended that Marintorres serve his sentence at a work ethic camp, then be released to community placement. An offender who qualifies for work ethic camp will serve 120 to 180 days and, upon successful completion, will receive credit for three days of confinement for every day actually served. RCW 9.94A.137(1)(b), (2).

After preliminary prisoner intake at Shelton, the Department of Corrections placed Marintorres at the Olympic Corrections Center (OCC), where he arrived on June 14, 1996. His tentative release date was July 13, 1997, which reflected the rate at which he could earn good time if he did not complete work ethic camp. Marintorres spoke Spanish but not much English, so he was enrolled in a three-week English class at OCC before getting a job assignment. He was not admitted to work ethic camp immediately, but was on a waiting list for that program. At the end of the English class, he was assigned to a forestry crew.

Marintorres and his fellow inmate forestry crew resided at the Ozette unit, a fenced camp located in the woods 28 miles from Forks. Department of Corrections and OCC policies and regulations in the Spanish language were posted at Ozette. On the evening of September 2, 1996, Marintorres vanished from camp; he was recaptured later that night and charged with first degree escape.

At trial, the prosecutor moved in limine to confine the defendant's testimony to the facts relevant to the charge of escape, rather than permitting Marintorres to "tell his life story and retry his first case [his King County conviction for selling a small amount of cocaine]. That's not why we're here. . . . I don't want to spend hour, after hour, after hour

this afternoon talking about his life in Cuba and why he got a wrong deal in the first case." Defense counsel responded that the State had to prove not only that Marintorres had been detained for a felony conviction and had escaped, *see* RCW 9A.76.110, but also that Marintorres knew he left without permission. *State v. Descoteaux*, 94 Wn.2d 31, 34, 614 P.2d 179 (1980), *overruled on other grounds by State v. Danforth*, 97 Wn.2d 255, 643 P.2d 882 (1982); *State v. Anderson*, 72 Wn. App. 453, 462, 864 P.2d 1001, *review denied*, 124 Wn.2d 1013 (1994). To that end, Marintorres wanted to:

> testify that he was arrested for Delivery of Cocaine. A very small amount. That's relevant to his knowledge and to his state of mind about the consequences for that. He will testify about the process that he underwent in the criminal justice system there in King County Superior Court, and that his attorney on numerous occasions advised him that he would be doing 120 days at a work ethic camp. He'll testify about his confusion regarding the sentence that was handed down. He'll testify that when he went to Shelton [for DOC intake processing] he was advised that he was going to be doing 120 days in a work ethic camp. That is the essence of his testimony, and it goes to his state of mind. It goes to his knowledge. There's going to be a lot of testimony regarding what people told him . . . . It's not hearsay because it goes to Mr. Marintorres' knowledge—knowledge of the sentence imposed.

The trial court ruled that Marintorres could not testify about the King County conviction because he could not collaterally attack that conviction; and although he could testify to his personal understanding of the duration of his sentence, he could not relate what others had told him concerning the sentence.

During Marintorres's testimony, the trial court sustained many of the prosecutor's objections to questions concerning the King County case—whether Marintorres met with a probation officer; whether his former lawyer or an interpreter was present for sentencing; what he understood about his sentence "[a]s a result of . . . what the judge

told you, your lawyer told you, and the interpreter interpreted for you"; whether he had met with a counselor at Shelton "who talked to you about the sentencing imposed and where you would be serving the sentence"; "[a]s a result of your meetings with the counselor in Shelton did you understand that you would be serving your sentence at a [sic] 120 days in a work ethic camp?"

The prosecutor then renewed his motion in limine, saying that even though the court sustained his objections, the defendant had blurted out improper answers before the jury. The court permitted defense counsel to make an offer of proof as to his client's proposed testimony. Counsel said that it was relevant that a small amount of cocaine was involved in the King County conviction because that bore on Marintorres's belief that his sentence was only 120 days; and that the alleged assurances of his former lawyer, a counselor at Shelton, and an immigration officer about a short sentence were also relevant because they tended to prove his state of mind. The prosecutor moved for a mistrial to avoid the same trouble fending off objectionable questions and answers. The court denied the motion for mistrial, and Marintorres resumed testifying.

Marintorres said that he left the OCC camp on September 2 because he did not think he had to be there any longer. His explanation, "I was told 120 days, and that was way past the 120 days," was stricken by the court. He was permitted to answer that he understood the sentence in the cocaine case was 120 days, and that on September 2 he had been in custody "[a] lot more" than 120 days. But defense counsel asked a question that induced Marintorres to say that someone had told him that he "did not belong in prison" for selling a small amount of cocaine and, after the prosecutor objected and the jury went out, the judge reminded counsel that he would not allow collateral attacks on the prior conviction.

After conviction, as part of the judgment and sentence,

the trial court ordered Marintorres to pay $1,578 toward the cost of the trial interpreter.

## ANALYSIS

Hearsay Testimony

■ Hearsay is a statement, other than one made by the declarant in testimony at the trial or hearing, offered to prove the truth of what is asserted. ER 801(c). Hearsay is not admissible, unless an exception applies. ER 802. The trial court has broad discretion in making evidentiary rulings. *State v. Castellanos*, 132 Wn.2d 94, 97, 935 P.2d 1353 (1997). Marintorres argues that his understanding that he had been sentenced to 120 days, notwithstanding the King County judgment and sentence specifying 24 months, was relevant to his state of mind, i.e., his belief that his sentence had run its course.

■ ■ This argument fails because the proffered evidence was not relevant. Evidence is relevant if it tends to make more or less probable the existence of any fact of consequence to the action. ER 401. An element of the crime of first degree escape is that the inmate knew he was leaving confinement without permission. *See Descoteaux*, 94 Wn.2d at 34-35; *Anderson*, 72 Wn. App. at 462. Even if Marintorres believed that his sentence was 120 days and, therefore, had expired before September 2, 1996, he did not testify or offer proof that anyone at OCC or any prison policy gave him permission to simply leave the detention camp whenever he desired. Rather, he testified that after a prisoner count at 6:00 P.M., he decided to leave without telling anyone except another inmate who was planning to leave with him. He "decided it was time to leave" and "wasn't about to tell anyone" else. A rational trier of fact could easily conclude from this that Marintorres knew he was leaving confinement without permission. Even if his sentence had expired, Marintorres does not establish a link between that event and knowledge on his part that he had official permission to leave the camp. Thus, his belief

concerning the length of sentence was not relevant to a fact in issue.

■■ Furthermore, we do not agree that the statements of his former lawyer, a prison counselor, and an immigration officer were admissible on the issue of Marintorres's state of mind. ER 803(a)(3) is a hearsay exception for a "statement of the *declarant's* then existing state of mind . . . ." (Emphasis added.) Marintorres does not come within this exception because he was offering to testify to what other persons had told him about the length of sentence—not to show *those declarants'* states of mind, but his own.

Marintorres argues, however, that the statements were simply not hearsay because he was not offering them for the truth of what was said—that he would serve only a 120-day sentence—but to prove the statements' effect on his own state of mind. Statements can be admitted for this purpose. *State v. Roberts*, 80 Wn. App. 342, 352, 908 P.2d 892 (1996); *State v. Mounsey*, 31 Wn. App. 511, 522 n.3, 643 P.2d 892, *review denied*, 97 Wn.2d 1028 (1982). But to be admissible on this theory, the effect of the statement on the hearer must be relevant to an issue at trial. *Roberts*, 80 Wn. App. at 352; 5B KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 336, at 34-35 (3d ed. 1994), at 17 (Supp. 1998). As we have said, what is relevant here is whether Marintorres believed he had permission to leave the Ozette prison camp, which is not the same thing as whether he believed his sentence was 120 days.

Marintorres also argues that the exclusion of the proposed testimony violated his constitutional rights to testify in his own behalf and present a defense, but the only case he cites on point is *Roberts*, which turns on an application of the Rules of Evidence and does not mention the constitution. *Roberts*, 80 Wn. App. at 352-53. We will not consider this issue further.

Cost of Interpreter

Marintorres argues that assessing him the cost of the

interpreter violates equal protection because hearing-impaired persons are exempted from such costs. Chapter 2.43 RCW pertains to courtroom interpreters for non-English-speaking persons. RCW 2.43.040(4) provides that the "cost of providing an interpreter is a taxable cost of any proceeding in which costs are ordinarily taxed." The superior court may require a convicted defendant to pay costs. RCW 10.01.160.

In comparison, Chapter 2.42 RCW is intended to "secure the constitutional rights of deaf persons and of other persons who, because of impairment of hearing or speech, are unable to readily understand or communicate the spoken English language," and who therefore require the assistance of courtroom interpreters. This statute does not contain a provision similar to RCW 2.43.040(4), defining the cost of an interpreter for a non-English-speaker as a "taxable cost." In fact, RCW 2.42.120(1) provides that in a criminal case involving a hearing-impaired defendant, the court "shall appoint and pay for a qualified interpreter." From this discrepancy, Marintorres argues that he has been denied equal protection.

Equal Protection

■■ "Under the equal protection clause of the Washington State Constitution, article 1, section 12, and the [F]ourteenth [A]mendment to the United States Constitution, persons similarly situated with respect to the legitimate purpose of the law must receive like treatment." *State v. Coria*, 120 Wn.2d 156, 169, 839 P.2d 890 (1992) (citing *State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987)). When a state distributes benefits unequally, the distinctions it makes are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment. *Zobel v. Williams*, 457 U.S. 55, 60, 102 S. Ct. 2309, 72 L. Ed. 2d 672 (1982).

Standard of Review

■ Generally the first question to be addressed in eval-

uating an equal protection argument is the standard of review, i.e. strict scrutiny, intermediate scrutiny, or rational relationship. *Coria*, 120 Wn.2d at 169-70. Here, however, we need not decide the appropriate standard because the legislative classification fails even the rational relationship test. The requirements for such review are that the classification (1) apply alike to all members within the designated class; (2) be based on reasonable distinctions between those within and those outside the class; and (3) bear a rational relationship to the purpose of the legislation. *City of Seattle v. McConahy*, 86 Wn. App. 557, 570, 937 P.2d 1133 (citing *American Network, Inc. v. Washington Utils. & Transp. Comm'n*, 113 Wn.2d 59, 78, 776 P.2d 950 (1989)), *review denied*, 133 Wn.2d 1018 (1997).[1]

■ In support of the statutes treating non-English speaking defendants different than hearing-impaired defendants, the State asserts that "[t]here is a rational basis for the law being challenged and its legitimate state objective, i.e., requiring convicted criminal defendants to reimburse the County for direct expenses related to their proceedings." But the test is not whether the *law* being challenged has a rational basis; it is whether there is a rational basis for the classification embodied by the legislative scheme. *See e.g.*, *American Network*, 113 Wn.2d at 78; *Zobel*, 457 U.S. at 60; *Coria*, 120 Wn.2d at 169-70; and *supra* note 1. As to the classification itself, the State offers only that "a lack of English language proficiency need not

---

[1] *Zobel* characterized such review as follows: "Generally, a law will survive that scrutiny if the *distinction* it makes rationally furthers a legitimate state purpose." *Zobel*, 457 U.S. at 60 (emphasis added).

*Coria* has a similar formulation. "Under the rational basis test, a legislative *classification* will be upheld 'unless it rests on grounds wholly irrelevant to the achievement of legitimate state objectives.'" *Coria*, 120 Wn.2d at 171 (quoting *Omega Nat'l Ins. Co. v. Marquardt*, 115 Wn.2d 416, 431, 799 P.2d 235 (1990)) (emphasis added).

Under all these formulations a rational basis must exist for the *classification*, not merely for the law which is being challenged. Equal protection is concerned with the differences in the way similarly-situated people are treated under a legislative scheme. Substantive due process is concerned with the fundamental fairness, and thus rational basis, for the effect of any specific law on an individual. Marintorres has not made a substantive due process argument.

be a permanent situation." But the statute does not by its terms apply only to defendants who have been long-time residents and have been offered English language training. And, the hearing-impaired can also be trained to cope with their impairment, for example, through lip-reading. Yet the statute would afford such a hearing-impaired defendant a free translator while denying the same to a defendant who lacked English language proficiency. In conclusion, we find no reasonable rationale for treating hearing-impaired convicts differently from non-English speaking convicts in deciding who should reimburse the State for the cost of interpreters.

Finally, Marintorres filed a pro se supplemental brief in which he relates the circumstances of his emigration from Cuba, complains of occurrences in the King County trial, and ultimately challenges the handling of his escape trial by his lawyer, the judge, and the Spanish interpreter. Unfortunately, his brief is conclusory and does not identify any specific legal issues or cite any authority. It does not comply with RAP 10.3 and 10.4 pertaining to the content of briefs. This court will not consider these arguments. *Palmer v. Jensen*, 81 Wn. App. 148, 153, 913 P.2d 413 (1996), *remanded on other grounds*, 132 Wn.2d 193 (1997).

The conviction is affirmed. We vacate the assessment of interpreter cost against Marintorres.

HOUGHTON, C.J., and HUNT, J., concur.