COURT OF APPEALS DIV
2015 JUL 13 AM 11: 08


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DONALD BAKER, | ) | DIVISION ONE |
| Appellant, | ) ) ) | No. 71991-2-I |
| v. | ) ) | UNPUBLISHED OPINION |
| STATE OF WASHINGTON DEPARTMENT OF EMPLOYMENT SECURITY, | ) ) ) ) | FILED: July 13, 2015 |
| Respondent. | ) ) | |

PER CURIAM — Donald Baker appeals an order affirming an administrative decision disqualifying him from unemployment benefits. Because Baker committed disqualifying misconduct when he missed three consecutive days of work without properly notifying his employer, we affirm.

## FACTS

Donald Baker worked for Maintech Acquisition LLC (Maintech) from November 29, 2011 until his discharge on December 23, 2011. Maintech had a written attendance policy that required employees to show up for work when scheduled and to show up on time. The policy stated that three consecutive "no call, no shows" would be considered a voluntary resignation by the employee and would result in termination of employment. Baker was aware of Maintech's policy.

On December 12 and 13, 2011, Maintech allowed Baker to work half days so that he could attend to pending court matters. When he returned to work, he informed his supervisor, Tyson Wittrock, that the court matters were resolved.

On the morning of December 20, 2011, Baker was arrested at his apartment on suspicion of assault. He did not show up for his 7:00 a.m. shift or notify Wittrock that he would be absent that day. Baker spent that night in jail, and though he was released around 9:30 a.m. the next day, he again failed to show up for work or contact Wittrock. He instead called a co-worker who told Wittrock that Baker had been in jail.

The next day, December 22, 2011, Baker was once again absent from work. He called Wittrock around noon and said he could not come to work because he had legal issues to attend to. Wittrock told Baker to come into work the next day to discuss his future with the company.

On December 23, 2011, Baker met with Wittrock, who told him his employment was terminated due to his absences.

Baker subsequently applied for unemployment benefits for the week he was incarcerated and missed three work days. In his application, Baker told the Employment Security Department (Department) that he had been laid off due to lack of work. The Department initially approved Baker's claims. But the Department later learned that Baker had been discharged, not laid off. The Department then issued a determination notice, notifying the parties that Baker was disqualified from benefits because he had been discharged for misconduct pursuant to RCW 50.20.066.

Baker appealed the Department's decision to the Office of Administrative Hearings. The administrative law judge (ALJ) issued an initial order affirming the Department's decision. The ALJ noted that the parties' testimony "conflicted on material points," but found Baker's testimony not credible.

Baker petitioned the Department's commissioner for review of the Initial Order. The commissioner adopted the ALJ's findings of fact and conclusions of law and affirmed the initial order.

Baker appealed the commissioner's decision to Snohomish County Superior Court and submitted new evidence. The court declined to consider the new evidence and affirmed the commissioner's decision. The court also denied Baker's untimely motion for reconsideration. He appeals.

## DECISION

### Standard of Review

The Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, governs judicial review of a decision of the commissioner of the Employment Security Department. Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). We sit in the same position as the superior court and apply the WAPA standards directly to the agency record. Tapper, 122 Wn.2d at 402. We review the decision of the commissioner, rather than the underlying decision of the ALJ, except to the extent that the commissioner adopts the ALJ's findings of fact. RCW 34.05.558; Verizon Nw., Inc. v. Emp't Sec. Dep't, 164 Wn.2d 909, 915, 194 P.3d 255 (2008). The commissioner's decision is considered prima facie correct, and the burden of demonstrating its invalidity is

on the challenging party. RCW 50.32.150; RCW 34.05.570(1)(a); <u>Griffith v. Emp't Sec. Dep't</u>, 163 Wn. App. 1, 6, 259 P.3d 1111 (2011). We review the comissioner's findings of fact for substantial evidence. <u>King County Pub. Hosp. Dist. No. 2 v. Dep't of Health</u>, 178 Wn.2d 363, 372, 309 P.3d 416 (2013); RCW 34.05.570(3)(e). In doing so, we consider the evidence in the light most favorable to the prevailing party and defer to the commissioner's credibility determinations and resolution of conflicting testimony. <u>William Dickson Co. v. Puget Sound Air Pollution Control Agency</u>, 81 Wn. App. 403, 411, 914 P.2d 750 (1996). Unchallenged findings of fact are verities. <u>Fuller v. Emp't Sec. Dep't</u>, 52 Wn. App. 603, 605, 762 P.2d 367 (1988). We review conclusions of law de novo. <u>William Dickson Co.</u>, 81 Wn. App. at 407.

<u>Findings of Fact / Sufficiency of Evidence</u>

As an initial matter, we note that Baker fails to comply with our rules on appeal. Pro se litigants are held to the same standard as attorneys and must comply with all procedural rules on appeal. <u>In re Marriage of Olson</u>, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). An appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). Arguments not supported by references to the record, meaningful analysis, or citation to pertinent authority need not be considered. <u>Cowiche Canyon Conservancy v. Bosley</u>, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Baker does not assign error to any factual finding or conclusion of law, cite to the administrative record, or provide more than scant citation to legal authority. RAP 10.3(a)(4), (5), (6); RAP

10.3(g), (h). These omissions preclude review. <u>Olson</u>, 69 Wn. App. at 626. But even ignoring these deficiencies, his arguments are not persuasive.

The Employment Security Act (Act) provides compensation to individuals who are "involuntarily" unemployed "through no fault of their own." RCW 50.01.010; <u>Tapper</u>, 122 Wn.2d at 407-408. Employees discharged for "misconduct" cannot receive unemployment benefits. RCW 50.20.066(1); WAC 192-150-200(1). Under the Act, "misconduct" includes "[w]illful or wanton disregard of the rights, title, and interests of the employer or a fellow employee." RCW 50.04.294(1)(a). Certain types of conduct constitute misconduct per se. RCW 50.04.294(2); <u>Daniels v. Dep't of Emp't Sec.</u>, 168 Wn. App. 721, 728, 281 P.3d 310 (2012). Among these are "[r]epeated and inexcusable absences, including absences for which the employee was able to give advance notice and failed to do so"; and "[v]iolation of a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule." RCW 50.04.294(2)(d), (f).

Here, Baker does not dispute that he was aware of Maintech's attendance policy. Nor does he contend that the policy is unreasonable. Rather, he argues, as he did below, that he was discharged due to his arrest rather than his absences, he was in jail for a different period than that found by the commissioner,[1] he attempted to contact Wittrock from jail, at least a portion of his

---

[1] Baker's argument on appeal contradicts his testimony before the ALJ. At the administrative hearing, Baker provided the dates of his incarceration: "I went in on 12/20, and I was released 12/21." He reaffirmed this information several times throughout the hearing. To confirm Baker's answer, the ALJ repeated the question: "Were you incarcerated for any amount of time in the month of December 2011?" Baker responded, "Yes, ma'am. One day." The ALJ then said, "Okay. And that one day was 12/20 to 12/21; is that right?" to which Baker answered, "Yes, ma'am."

absence was excused, and generally, that Maintech proffered false evidence. These arguments fail for several reasons.

First, the weight, persuasiveness, and credibility of the evidence are beyond the scope of our review. William Dickson Co., 81 Wn. App. at 411. As noted above, the commissioner found Baker's testimony to be "self-serving" and "not credible."

Second, Baker has not assigned error to, or otherwise expressly challenged, any of the commissioner's findings of fact. RAP 10.3(g), (h). The unchallenged findings establish that Maintech's attendance policy authorized an employee's discharge after three consecutive "no call, no shows," and that Baker was aware of this policy. They further establish that Maintech discharged Baker because he missed three consecutive work days without giving advance notice of his absences. These unchallenged findings are verities.

Third, the findings are, in any event, supported by substantial evidence. The finding that Maintech's policies authorized discharge after three consecutive "no call, no shows" is supported by ample evidence. Maintech submitted a copy of the written policy as an exhibit. The policy defined absenteeism as "three (3) hours of work missed within a scheduled workday without properly notifying your Supervisor *irrespective of cause*." (Emphasis added.) To give proper notice, an employee was responsible for contacting his or her supervisor a minimum of one hour prior to the start of the scheduled workday, either by e-mail or telephone. In the absence of a supervisor, "notification must be made to the next reporting relationship (i.e., Operations Manager, etc.)." The policy further provided,

"Failure to properly follow the notification process as stated will be classified as a 'no call, no show' as defined below." "No call, no show" meant "not reporting to work and not calling to report the absence." Maintech's policy specifically stated that three consecutive "no call, no shows" would be considered a voluntary resignation by the employee and would result in discharge. Wittrock gave testimony to the same effect.

The record also supports the finding that Maintech discharged Baker for violating the "no call, no show" policy. On a written form submitted to the Department in June 2012, Maintech indicated that the incident that caused Baker's discharge was "no show no call 3 days." Similarly, an e-mail Wittrock sent to a Maintech administrator explained that "[o]n December 20th, 21st, and 22nd Donald failed to call or show up for work and his employment was terminated on the 23rd due to his attendance." Wittrock testified that Baker neither called in nor came to work on December 20 or December 21. Though Wittrock received a message from Baker on December 21, the message came from one of Baker's co-workers—not Baker. And while Baker called the office on December 22, it was not until 11:42 a.m., nearly five hours after the start of his scheduled workday. Thus, substantial evidence supports the finding that Baker was discharged due to his absence from work on three consecutive days without notifying his employer.

### Conclusions of Law

The above-mentioned findings, in turn, support the commissioner's conclusion that Baker committed disqualifying misconduct on three independent

grounds: (1) failing to appear for work as scheduled without reasonable excuse, (2) violating Maintech's attendance policy, and (3) acting with willful and wanton disregard of his employer's interests. RCW 50.04.294(2)(d), (2)(f), and (1)(a).

Baker appears to argue that circumstances beyond his control—i.e., his arrest—preclude a conclusion that he committed any disqualifying misconduct. But the commissioner, citing In re Sanchez, Empl. Sec. Commr Dec.2d 801 (1988), ruled that "absence due to incarceration is misconduct under the Act if the claimant should have reasonably expected his actions would lead to incarceration." Baker does not challenge this authority or assign error to the commissioner's conclusion that he "engaged in criminal activity on his own time which he knew or should have known would lead to his being unable to appear for work as scheduled." Baker's conclusory argument to the contrary is insufficient to carry his burden on appeal. See State v. Marintorres, 93 Wn. App. 442, 452, 969 P.2d 501 (1999). The commissioner properly concluded that Baker's actions constituted disqualifying misconduct.

Affirmed.

FOR THE COURT:

Spearman, C.J.

Trickey, J.

Verellen, J.

8