# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72723-1-I |
| Respondent, | ) ) | DIVISION ONE |
| v. | ) ) ) | |
| DARRIN MARTINS, | ) ) | UNPUBLISHED OPINION |
| Appellant. | ) ) | FILED: May 2, 2016 |

SPEARMAN, J. – Darrin Martins appeals his conviction for felony violation of a no-contact order. He challenges the trial court's admission of his prior acts of domestic violence under ER 404(b). We affirm.

## FACTS

Based on allegations that Martins assaulted his estranged wife, Katherine, and violated a protective order, the State charged him with fourth degree assault and felony violation of a no-contact order. Prior to trial, the parties stipulated that Martins knew a no-contact order was in effect when the charged incident occurred. Martins then moved to exclude evidence of his prior domestic violence against Katherine. The court denied the motion, ruling as follows:

> Under ER 404(b), ER 403, and State v. Magers, 164 Wash.2d 174 (2008), the Court (1) finds by a preponderance of the evidence that the misconduct occurred, (2) the misconduct outlined in the Petition for Order of Protection is admissible to show the victim's state of mind and whether she was in fear of bodily harm, (3) the misconduct outlined in the Petition for Order of Protection is relevant to show the reasonableness of the victim's fear, which is

directly relevant to an element of the crime charged, and (4) after conducting a balancing test, the Court concludes the probative value of the misconduct described in the Petition for Order of Protection is not outweighed by any prejudicial effect.[1]

At trial, Bellingham Police Officer David Johnson testified that on July 28, 2014, he responded to a report of an "order violation" at an apartment complex. Verbatim Report of Proceedings (VRP) at 150. Martins told Officer Johnson at the scene that he came to the apartments because the family's missing cat had been found. Officer Johnson also spoke to Katherine, who "seemed a little bit maybe in a state of shock . . . " VRP at 153. She told Officer Johnson that Martins grabbed her face and hair and kicked both of her shins with the back of his shoe. Officer Johnson testified that Katherine's neighbor, Tracey O'Dell, also "seemed like she was really freaked out" and "looked scared" and "kind of shaky." VRP at 155.

Katherine testified that she did not want to attend the trial and did so only because she had been subpoenaed. When asked to describe the events of July 28, 2014, she initially said "I am not completely clear, I don't know the entire situation I just want to plead the 5th. I just don't, if I don't remember all the incidents it's kind of blurry." VRP at 101. Following a colloquy with the court outside the presence of the jury, Katherine testified that when she and her children arrived at her apartment on July 28, Martins was sitting outside on the steps. Katherine entered her apartment and immediately went upstairs to use the bathroom. Once inside the bathroom, she closed the door.

---

[1] Clerk's Papers at 82.

- 2 -

Martins followed her into the apartment and opened the bathroom door. Katherine put her hand and body against the door but was unable to close it. Martins then reached his hand through the door opening. Katherine testified that her memory of these events was "blurry" and she wasn't "totally sure." VRP at 111. She then testified that Martins reached around the door and grabbed her hair, but added that "[m]aybe he was trying to get the cat, I'm not sure." Id. She agreed that Martins kicked her with some part of his foot and that she thought about trying to escape through the bathroom window. When asked if she was scared, Katherine said "I don't know what I was." VRP at 113. She admitted that her neighbor Tracy came over during the incident but denied that Tracy had to pull Martins away from her. After Martins left, Katherine walked to Tracy's house "to be in a safe place [.]" VRP at 115.

When asked about the no-contact order in effect at the time of the incident, Katherine claimed "it wasn't my choice" and said she obtained the order because "the Women Care Shelter" recommended it. RP 107. She conceded, however, that she had outlined reasons why she and her children needed a protective order and that the court found them sufficient to enter a protective order. The prosecutor later returned to this topic:

> Q. I mean you filed a document with the court telling the Court why you needed an order of protection; is that correct?
> A. The Women Care Shelter actually took a little, they took several little stuff, yeah, I guess so.
> Q. Uh-huh.
> A. But it was a little bit overexaggerated.
> Q. You told the court that Mr. Martins had threatened to skin you alive in the front yard?
> A. That was not any time recent at all, that was a long time ago and, um, yeah.

- 3 -

. . .

> Q. . . . It's been a violent past with Mr. Martins?
> A. He's, oh gosh. I'm not the best of person either, you know.[2]

A short time later, the court verbally instructed the jury that they could consider "other crimes or wrongs or acts . . . which occurred before July 28, 2014, . . . only for . . . the limited purpose of determining the reasonableness of any fear that Ms. Martins may have had . . . ." VRP at 120.

On cross-examination, Katherine testified that their missing cat had returned home the day of the incident. She also testified she was "slightly" afraid for her safety when Martins tried to enter the bathroom. VRP at 123. When asked if her fear was due to Martins' current or past behavior, she said "I don't really, you know, I don't recall." Id.

Katherine's neighbor, Tracey O'Dell testified that she picked up the Martins' missing cat from animal control on the day of the incident. As she brought the cat into Katherine's apartment she heard "a struggle and a lot of screaming" from a male voice. VRP at 130. She described the struggle as "thumping against a wall." VRP at 131. O'Dell sent all the children to her house and then entered Katherine's apartment. She found Katherine "pinned against the bathroom wall" by Martins. "[H]e had his hands on her arms" and "she was on her tiptoes . . . like she was climbing backward . . . trying to climb into the wall . . . to try to escape." VRP at 132. O'Dell said she would "never forget the look on her face. I've never seen eyes so big and someone so absolutely terrified [.]" Id. O'Dell wedged herself between Martins and Katherine and forcibly pushed

---

[2] VRP at 116-17.

Katherine away from Martins and down the hall. Katherine and O'Dell then retreated to O'Dell's apartment and locked the door.

A short time later, Martins arrived at O'Dell's apartment and said he wanted to see the cat. He rubbed the cat "like there was nothing wrong or kind of blaming Katy for [the cat's] condition . . . it just was a little odd [.]" VRP at 134-35. O'Dell asked him to leave and he did.

O'Dell and Katherine later realized that Katherine and Martins' son was with Martin in Katherine's apartment. O'Dell walked over and asked Martins if she could take the boy to her apartment. Martins became "agitated," "aggressive and loud." VRP at 138. He was shouting, pacing "aggressively," and calling O'Dell names. O'Dell then returned to her apartment and called the police.

On cross-examination, O'Dell admitted she had previous convictions for five counts of theft. O'Dell explained that she lost her job because of an injury and stole from a grocery store. The parties stipulated to the admission of a portion of O'Dell's 911 call, which stated in part:

> [OPERATOR]: . . . the wife and the two little girls, okay. And has there been any type of assault that has occurred?
>
> . . .
>
> [O'DELL]: [W]hen I walked . . . into the house it's almost as if he was starting to grab her. I don't know it's been, you know, it's, I have heard him be verbally very abusive and like when I went over to talk to him he was getting all irate . . . .[3]

At the close of the evidence, the State moved to dismiss the fourth degree assault count, arguing that the evidence did not support an assault separate from

---

[3] VRP at 217.

the assault necessary for the felony violation of a no-contact order. The court granted the motion and dismissed the assault count.

The jury found Martins guilty of felony violation of a court order. He appeals.

DECISION

The sole issue on appeal is whether the trial court abused its discretion in admitting Martins' prior acts of domestic violence under ER 404(b). We review a court's decision to admit or exclude such evidence for abuse of discretion. State v. Magers, 164 Wn.2d 174, 181, 189 P.3d 126 (2008) (citing State v. Pirtle, 127 Wn.2d 628, 648, 904 P.2d 245 (1995)). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. Id. The trial court did not abuse its discretion.

ER 404(b) limits the admission of prior bad acts:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This rule bars the use of prior bad acts for the purpose of proving a person's character and action in conformity with that character. State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). However, the rule permits the admission of such acts for purposes listed in the rule or approved by the courts. State v. Cook, 131 Wn. App. 845, 849, 129 P.3d 834 (2006) (The permitted purposes listed in the rule are not exclusive).

Courts have admitted prior acts of domestic violence under ER 404(b) for a number of purposes. They include assisting the jury in assessing the credibility of a victim who recants or makes inconsistent statements, showing the reasonableness of a victim's fear where fear is an element of the charged offense, and explaining the victim's delayed reporting of an offense. State v. Magers, 164 Wn.2d at 183 (acts of domestic violence admissible to show victim's reasonable fear and to judge credibility of a recanting victim); State v. McCarthy, 178 Wn. App. 90, 103, 312 P.3d 1027 (2013) (citing Magers for proposition that defendant's prior acts are admissible to show victim's reasonable fear of bodily injury when such fear is an element of the charged assault). State v. Gunderson, 181 Wn.2d 916, 925, 337 P.3d 1090 (2014) (prior acts admissible to explain recantation or conflicting account of events); State v. Baker, 162 Wn.App. 468, 474-75, 259 P.3d 270 (2011) (prior acts admissible to assist jury in assessing credibility of victim who delays reporting or changes her story).

Here, the court admitted Martins' prior acts of domestic violence on the issue of Katherine's reasonable fear.[4] Contrary to Martins' assertions, the decision was well within the court's discretion. To convict Martins of felony violation of a court order, the jury had to find, among other things, that Martins committed an assault while violating the no-contact order. The court's instruction defining assault stated in part that an assault "is also an act . . . done with the intent to create in another apprehension and fear of bodily injury, and which in

---

[4] The court's written instructions stated that evidence of prior crimes, wrongs or acts could "be considered for the limited purpose of determining the reasonableness of Katherine Martins' fear." CP at 45.

fact creates in another a reasonable apprehension and imminent fear of bodily injury. . . ." CP at 43. Because the reasonableness of Katherine's fear was an element of the offense, Martins' prior acts of domestic violence were relevant and admissible. Magers, 164 Wn.2d at 182; State v. Ragin, 94 Wn. App. 407, 410, 972 P.2d 519 (1999) (defendant's prior violent acts admissible to show it was reasonable for the victim to be fearful of the defendant's threats); State v. Barragan, 102 Wn. App. 754, 760, 9 P.3d 942 (2000) (prior assaults admissible to show that victim reasonably feared defendant's threats would be carried out).

Martins argues in conclusory fashion that the prior domestic violence evidence "was overly prejudicial." Brief of Appellant at 10. We need not address claims that are insufficiently argued. State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990) (appellate court need not consider claims that are insufficiently argued); State v. Marintorres, 93 Wn. App. 442, 452, 969 P.2d 501 (1999) (appellate court need not consider conclusory arguments); State v. Thomas, 150 Wn.2d 821, 868-69, 83 P.3d 970 (2004) (court will not review arguments that receive only passing treatment). In any event, all such evidence is prejudicial, and reversal is not warranted unless its potential prejudice is "unfair" and outweighs its probative value. "Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." ER 403; Gunderson, 181 Wn.2d at 922-23. Considering the value of evidence showing that Katherine reasonably feared bodily injury, the court's verbal and written limiting instructions, and the fact that the prior acts evidence was limited in scope and did not involve

arrests, convictions, or assaults, the court did not abuse its discretion in concluding the probative value of the evidence outweighed any prejudicial effect.

Affirmed.

Spearman, J.

WE CONCUR:

Leach, J.

Cox, J.