FILED
3/8/2021
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of<br><br>PAUL LOCKE. | No. 81405-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Will Knedlik was a co-attorney-in-fact for Paul Locke under a January 2016 power of attorney.[1]  Knedlik assigns error to a number of orders entered by the trial court in connection with its determination that a later power of attorney, which appointed Partners In Care (PIC) as Locke's sole attorney-in-fact, was valid.  Because Knedlik fails to support his assignments of error with meaningful analysis or citations to authority, we affirm.

FACTS

In August 2019, Knedlik filed a complaint against PIC, Crossland Adult Family Home (Crossland), and Catherine Person.[2]  He also named a number of additional "[i]nterested [p]arties," including Locke; Kaiser Permanente, which Knedlik alleged was treating Locke for macular degeneration; and Melrose

---

[1] Locke died during the pendency of this appeal.

[2] Knedlik's complaint was not sworn.  In a later court filing, he attempted to "verif[y] his pleadings . . . by his signature below."  But verification requires attesting to the truth of the matter under oath, which Knedlik did not do.  Gates v. Port of Kalama, 152 Wn. App. 82, 88, 215 P.3d 983 (2009).

Citations and pin cites are based on the Westlaw online version of the cited material.

Terrace, the condominium cooperative where Locke's home was. According to his complaint, Knedlik was Locke's personal friend and, on January 28, 2016, was appointed Locke's co-attorney-in-fact together with Person.

Knedlik alleged in his complaint that after Locke suffered a fall in late September 2018 that led to his hospitalization, Person engaged in efforts to thwart Locke's desired return to his Melrose Terrace home. According to Knedlik, Person's efforts culminated with her "physical abduction" of Locke on April 29, 2019. Knedlik alleged that Crossland, where Locke was then residing, assisted Person with the abduction. Knedlik also alleged that after being abducted, Locke appointed PIC as his agent "based upon a unilateral decision imposed on [him], through intentional physical duress, as orchestrated by . . . Person." According to Knedlik, Person, Crossland, and PIC subsequently engaged in a campaign to, among other things, prevent Locke from receiving eye injections to treat his macular degeneration, prevent Locke from returning to Melrose Terrace, and "isolate him . . . and . . . infantilize him in furtherance of their own personal interests, so that he can never move back into his beloved home, and so that he continues to pay monthly fees, as a thus blinded cash-cow, both to [Crossland] and also to . . . PIC."

Knedlik asked the court to "[d]eclare void *ab initio* and terminate as a matter of law" any agency created by Locke in PIC "on or about April 29, 2019," i.e., the date Knedlik alleged Locke was abducted. Knedlik also asked the court to terminate Person's role as co-attorney-in-fact under the January 2016 power of attorney that appointed Knedlik and Person as co-attorneys-in-fact.

2

A short time after Knedlik filed his August 2019 complaint, PIC filed, under a separate action (PIC's confirmation action), a petition to confirm the validity of a later power of attorney dated May 8, 2019, under which Locke had appointed PIC as his sole attorney-in-fact. PIC supported its petition with a declaration from Locke's attorney, Barbara Isenhour.

According to Isenhour, she began assisting Locke with his estate planning in 2016. Locke brought Knedlik and Person to his initial meeting with Isenhour, during which Locke explained that he was 89 years old and had never executed a will or power of attorney. During the meeting, Locke, who had no living family members, agreed that a will was important to ensure that his substantial estate went to support policy issues that were important to him. Locke also agreed that it was important to have a power of attorney to designate an agent to help him if he became incapacitated. Locke asked Knedlik and Person if they were willing to serve as his agents. They indicated they were, and Isenhour prepared a power of attorney, which Locke signed.

Isenhour declared that in late 2018, Person called her to let her know that she had found Locke unconscious in his condominium after suffering a fall. There was substantial loss of blood from the fall, and when he arrived at Harborview, Locke was dehydrated and malnourished. Eventually, Locke was discharged to a nursing home, and Person then located an adult family home, Crossland, where Locke continued to reside at all times relevant herein.

According to Isenhour, in early April 2019, Knedlik emailed her copies of several exchanges with Crossland's owner in which Knedlik raised complaints

with the quality of the care Crossland was providing. Isenhour declared that "[e]ach exchange with [Crossland] escalated in terms of the aggressive tone from Mr. Knedlik." Isenhour declared that on April 9, 2019, she met with Knedlik and Person to discuss Knedlik's concerns about Locke's care at Crossland. According to Isenhour, "[t]he meeting was very acrimonious between Mr. Knedlik and Ms. Person, as Mr. Knedlik expressed his anger at Ms. Person for not being more supportive of a plan for Mr. Locke to return to his condominium." Isenhour declared that after the meeting, there was a more conciliatory exchange between Knedlik and Person in which they agreed that Locke should retain a case management agency to investigate whether it was feasible for Locke to return home. However, "a few days later, Mr. Knedlik's emails and written memorandums started again, but now Mr. Knedlik directed his anger at both the owner of [Crossland] and Ms. Person."

Isenhour declared that "[b]ecause of the increasing breakdown in the co-agent relationship" between Knedlik and Person, Isenhour set up an appointment to meet with Locke on April 29, 2019 (i.e., the day that Knedlik alleged Locke was abducted). She declared that at the meeting, "Locke told me that he did not want Mr. Knedlik to continue to serve as his agent" and that Locke "was concerned that Mr. Knedlik had his checkbook and he wanted to be sure his care at [Crossland] was paid promptly." According to Isenhour,

> [Locke] was also unhappy about the negative interactions between Mr. Knedlik and the [Crossland] staff and owner and Mr. Knedlik's negativity with Ms. Person. Mr. Locke knew that Ms. Person did not have the time because of her job to serve as his sole agent so I encouraged Mr. Locke to consider naming a professional fiduciary as his agent in place of Mr. Knedlik and Ms. Person. I gave Mr.

4

Locke the names of professional fiduciaries to consider and explained that any professional agent would charge fees for the services they provided. I also assured Mr. Locke that any agent he hired could help him implement a care plan to return to his condominium if that was Mr. Locke's choice.

On May 8, 2019, Isenhour met with Locke, Person, and a representative from Aging Wisdom, the company that had been retained to assess the feasibility of Locke's returning to his condominium. According to Isenhour, the Aging Wisdom representative reviewed with Locke what it would cost for him to return home and have caregivers assist him there. Isenhour declared that the representative also offered to assist Locke to find a different adult family home if that was his concern, but Locke said he was happy with Crossland if he was not able to return home. Isenhour declared that "[e]veryone at the meeting assured Mr. Locke that he had sufficient resources to return to live in his condominium, but the costs would be considerably more than what Mr. Locke was currently paying for care."

After the meeting, Isenhour met with Locke "to discuss the change he wanted to make to his estate plan to have a professional fiduciary replace Mr. Knedlik and Ms. Person in his power of attorney and his Will." According to Isenhour, Locke had met with a representative from PIC the week before, and wanted to name PIC as his fiduciary. Isenhour declared that in her opinion, Locke had the mental capacity to execute a new power of attorney and will naming PIC as his agent:

> I spent a substantial amount of time reviewing these changes with Mr. Locke. In my opinion he had the mental capacity to execute a new power of attorney and Will, naming [PIC] as his agent. No other changes were made to either document. Mr. Locke was clear

about what he wanted and the reasons for making these changes. Mr. Locke did not want to get involved in disputes Mr. Knedlik was generating with other people who were helping Mr. Locke; Mr. Locke did not want Mr. Knedlik threatening to withhold payment for the care Mr. Locke was receiving at [Crossland]; and Mr. Locke did not want to side with Mr. Knedlik in Mr. Knedlik's disputes with Ms. Person. When I reviewed the revised documents with Mr. Locke, I had no concern that Mr. Locke's decision was involuntary or that he was being pressured by Ms. Person or the owner of [Crossland] to make this change against Mr. Locke's wishes.

PIC also supported its petition with a declaration from Stephe Newell-Niggemeyer, PIC's financial manager. Newell-Niggemeyer declared that Knedlik had called the police on Crossland several times and also "induced Mr. Locke's health care providers to report [PIC] and . . . Crossland . . . to Adult Protective Services ('APS')." Newell-Niggemeyer declared that APS interviewed Locke and investigated Crossland. An APS "Investigation Summary Report" attached as an exhibit to Newell-Niggemeyer's declaration indicated, with regard to allegations that Crossland had not taken Locke to his eye injection appointments, "In interview with [Locke] and others [Locke] clearly stated he did not want to attend any more appointments for eye injections. Record review documented [Locke] had told several individuals he did not want to go to the appointments." The report indicated further that the investigator did not identify any failed provider practice or write a citation as a result of the investigation.

In its petition requesting that the court confirm the validity of the May 2019 power of attorney appointing PIC, PIC also requested that the court (1) conclude that Knedlik lacked standing and was engaging in the unauthorized practice of law by maintaining his lawsuit, (2) consolidate Knedlik's lawsuit with PIC's confirmation action, (3) award PIC its fees and costs, (4) order Knedlik to

6

produce an accounting given an assertion in Knedlik's complaint that he had removed cash from Locke's condominium and deposited it into Knedlik's personal bank account for safekeeping, and (5) enter an order restraining Knedlik from filing additional lawsuits against anyone assisting Locke without prior court approval. PIC asserted that Knedlik "is a disbarred former attorney and vexatious litigant," citing excerpts from Knedlik's Washington State Bar Association discipline notice and other legal proceedings in which Knedlik had been admonished for filing frivolous litigation intended to harass third-parties.[3]

In October 2019, the trial court, through a commissioner, held a hearing on PIC's petition. After entertaining argument from both parties, the court made an oral ruling "that the case argued . . . by Mr. Knedlik looking out for the welfare of Mr. Locke is frivolous, vexatious, and an attempt to harass the named Defendants." The court indicated that it would enter an order "reminding Mr. Knedlik that the presentation of such a case . . . constitutes the unlawful practice

---

[3] Knedlik does not dispute that he was disbarred in 2000. In In re Knedlik, the Bankruptcy Appellate Panel of the Ninth Circuit (BAP) affirmed the Bankruptcy Court's sua sponte decision to (1) dismiss an involuntary bankruptcy petition, filed against Knedlik by his mother, as a collusive, "sham" filing intended to circumvent an earlier order barring Knedlik from filing any further bankruptcy petitions without prior court approval and (2) refer the matter to the U.S. Attorney for criminal investigation of bankruptcy abuse. Nos. WW-08-1011-KuKJu, 07-15547, 2008 WL 8444815, at 1 (9th Cir. B.A.P. June 30, 2008). In so doing, the BAP took note that Knedlik's litigation history included filing an involuntary bankruptcy petition against a company "on the eve of a public stock offering, as part of a negotiating strategy and in violation of a court injunction. Id. at 1. The BAP also took note that in the litigation that resulted from that filing, "the trial court characterized Knedlik's conduct as malicious and found 'Knedlik's conduct is beyond the Court's comprehension, and the Court has never seen a more outrageous course of conduct in all the time that the Court has sat on the bench.' " Id.

7

of law." The court also ruled that it was "clear" that the power of attorney appointing PIC was valid and that the allegations in Knedlik's complaint did not raise "any question . . . at all about the validity of the power of attorney." After the hearing, the court entered an order (1) consolidating Knedlik's lawsuit with PIC's confirmation action, (2) declaring the May 2019 power of attorney valid and effective, (3) dismissing the claims in Knedlik's complaint, (4) awarding PIC its fees and costs, (5) ordering Knedlik to produce an accounting of transactions made on Locke's behalf, and (6) restraining Knedlik from initiating, without prior written court approval, litigation against Locke, PIC, Person, Crossland, their attorneys, "and any other person assisting . . . Locke" without court approval. The court also entered an "Order Re: Unauthorized Practice of Law" stating, "Mr. Knedlik's complaint is one on behalf of Mr. Locke. Mr. Knedlik is not a licensed attorney and therefore has no standing to file this action. The case is a frivolous and vexatious attempt to harass all named defendants."

Knedlik subsequently moved for reconsideration of both orders. The trial court denied reconsideration. Later, the court fixed the amount of PIC's fees-and-costs award at $40,118.71. Knedlik appealed directly to the Washington State Supreme Court, which transferred the appeal to this court.

DISCUSSION

As a pro se litigant, Knedlik is held to the same standard as an attorney and must comply with all procedural rules on appeal. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). Among these rules is RAP 10.3(a)(6), under which an appellant must provide "argument in support of the issues

8

presented for review, together with citations to legal authority and references to relevant parts of the record." Failure to support assignments of error with legal arguments precludes review; so may failure to comply with procedural rules. Howell v. Spokane & Inland Empire Blood Bank, 117 Wn.2d 619, 624, 818 P.2d 1056 (1991); State v. Marintorres, 93 Wn. App. 442, 452, 969 P.2d 501 (1999). Similarly, arguments that are not supported by references to the record, meaningful analysis, or citation to pertinent authority need not be considered. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Here, Knedlik requests "reversals of every order entered by the trial court." But he fails to support his assignments of error with meaningful analysis or citations to pertinent legal authority. Under the authorities cited above, this failure dooms Knedlik's appeal.

Furthermore, the thrust of Knedlik's argument on appeal is that the trial court erred by confirming the validity of the May 2019 power of attorney and granting the other relief requested by PIC without (1) conducting an in-court examination of Locke under RCW 74.34.135 or (2) taking into account that Knedlik was immune from liability under RCW 74.34.050 and entitled to indemnity under the January 2016 power of attorney. But RCW 74.34.135 applies only when a petition for a vulnerable adult protection order (VAPO petition) is filed, see RCW 74.34.135(1), and nothing in the record reflects that Knedlik filed a VAPO petition. Knedlik suggests the trial court should have treated his lawsuit as a VAPO petition, but he cites no authority for the

proposition that the court was required to do so—particularly where Knedlik's complaint did not satisfy several of the applicable procedural requirements. See, e.g., RCW 74.34.110(2) ("A petition shall allege that the petitioner, or person on whose behalf the petition is brought, is a vulnerable adult."); RCW 74.34.110(3) ("A petition shall be accompanied by affidavit made under oath, or a declaration signed under penalty of perjury, stating specific facts and circumstances which demonstrate the need for the relief sought."); RCW 74.34.115(1) (requiring that "standard petition . . . forms must be used . . . for all petitions filed . . . under this chapter").[4]

Similarly, Knedlik is not immune from liability under RCW 74.34.050. That statute provides, "A person participating *in good faith in making a report under this chapter* or *testifying* about alleged abuse, neglect, abandonment, financial exploitation, or self-neglect of a vulnerable adult in a judicial or administrative proceeding under this chapter is immune from liability resulting from the report or testimony." RCW 74.34.050(1) (emphasis added). Knedlik's lawsuit was not a good faith report as contemplated by that statute. See RCW 74.34.035 (setting forth circumstances under which reports must and may be made to the department of social and health services and/or to law enforcement agencies). And, Knedlik did not provide any testimony in a proceeding under RCW chapter 74.34. RCW 74.34.050 does not immunize Knedlik from liability.

Finally, Knedlik does not cite any authority to persuade us the trial court

---

[4] Knedlik asserts in his opening brief that he twice requested the standard forms but was not provided them. App. Br. at 12. But Knedlik does not support this assertion with citation to the record.

erred in confirming the validity of the May 2019 power of attorney, and that power of attorney revoked all earlier powers of attorney. Therefore, Knedlik, who filed his complaint in August 2019, was not entitled to indemnity under the January 2016 power of attorney. Additionally, the January 2016 power of attorney indemnifies the attorney-in-fact from liability only "for acts done for [Locke] in good faith," and the trial court's unchallenged finding that Knedlik's lawsuit was "a frivolous and vexatious attempt to harass all named defendants" implies that Knedlik did not act in good faith. Cf. Fuller v. Emp. Sec. Dep't, 52 Wn. App. 603, 605, 762 P.2d 367 (1988) (unchallenged findings of fact are verities on appeal); RAP 10.3(g) (requiring parties to make "[a] separate assignment of error for each finding of fact a party contends was improperly made").

In short, Knedlik fails to cite to authority or provide meaningful analysis in support of his assignments of error. This failure alone is fatal to his appeal. Nevertheless, Knedlik also fails to persuade us that the trial court was required to conduct an in-court examination under RCW 74.34.135 before granting the relief requested by PIC or that he is entitled to liability immunity or indemnity. Any additional arguments raised by Knedlik—who not only fails to cite authority and provide meaningful analysis but whose briefs consist largely of nearly incomprehensible run-on sentences—are not sufficiently briefed to warrant consideration. Cf. Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) (appellate court "will not consider an inadequately briefed argument"); U.S. v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

FEES ON APPEAL

PIC requests fees on appeal. It cites a number of statutes and rules as the basis for its request, but it provides argument only with regard to RCW 11.125.200(3). That statute sets forth the circumstances under which a person must accept an acknowledged power of attorney and provides, "A person that refuses in violation of this section to accept an acknowledged power of attorney is subject to . . . [l]iability for reasonable attorneys' fees and costs incurred in any action or proceeding that confirms the validity of the power of attorney." RCW 11.125.200(3)(b).

It is undisputed that the May 2019 power of attorney appointing PIC was acknowledged. Furthermore, despite the fact that both PIC and the trial court also relied on RCW 11.125.200(3) with regard to the award of fees and costs below, Knedlik does not dispute the applicability of RCW 11.125.200(3)(b) in either his opening or his reply brief. Therefore, we grant PIC's requests for fees and costs on appeal under RCW 11.125.200(3)(b).

We affirm.

_____
Coburn, J.

WE CONCUR:

_____            _____
Dwyer, J.                          Appelwick, J.

12